Next case is number 16-20640, Davis v. Fort Bend County. We'll hear from Mr. Malkonian. May it please the court. We're here today because the district court held that Title VII's charge requirement is jurisdictional. In other words, that it implicates federal subject matter jurisdiction. That was incorrect. Therefore, the judgment below should be reversed and this case remanded for trial. Let me start with that basic legal question. Is the Title VII charge requirement a jurisdictional requirement? Well, let me step back. You concede that you did not exhaust, right? I do not, no. Well, then you better start off with that before you get to the constitutional, I mean the statutory point. Absolutely. I have three reasons why I didn't exhaust. First, Ms. Davis sent in an amended EEOC questionnaire in summer of 2011. That's in the record. This court has held, just recently, it's in my 28-J letter that I sent in on Wednesday, I think, that an EEOC questionnaire is part of an EEOC charge. And the regulations that underlie Title VII say that you may amend an EEOC charge informally. It doesn't have to be verified. It doesn't have to have all the indicia that an EEOC charge to begin the case has to have. So when Ms. Davis sent in that piece of paper that said religious discrimination… Was that the only change? Checked off the additional religious discrimination? Yes, Your Honor. That is the only change. But let me explain why I think… Did it already have the facts about the religious discrimination because it said that it arises out of her wanting to take that day off July the 3rd? The EEOC questionnaire doesn't say that. All it says is religion. But let me explain why it arose anyway out of that questionnaire. There are two documents in the record that indicate that both the TWC slash EEOC and Fort Bend knew exactly what was going on in this case. At the time of the administrative process. Not when the lawsuit was filed, but the administrative process. There's a letter from the TWC to the EEOC that talks all about Ms. Davis being fired because she wanted to go to church. And she wasn't allowed to go to church and that's why she was let go. And then Fort Bend's response to that letter… Excuse me, Fort Bend sends the letter, the first letter, the August 1st letter. And then the EEOC sends a predetermination letter that says, listen, we investigated your claim and we find that, you know, Ms. Davis… We're not going to jump into the case. And here are the facts. And the facts were Ms. Davis wanted to go to church. I think it's July 3rd. There was this big project going on. They didn't let her. She was fired. So if the purpose of the Title VII charge requirement is to make sure everyone at the administrative level knows what's going on, is able to mediate the case, is able to come to some kind of conclusion, all those policy purposes were accomplished here. I don't quite understand that because I thought her original charge was against sexual harassment, right? Yes, Your Honor. And when do you – precisely when do you say she checked the box that said religious? Well, let me step back and give you a bit of the background of how all this happened. Ms. Davis was sexually harassed much earlier. She made a complaint in the EEOC. And she succeeded. No. Well, her boss got fired. Her boss got fired, but the EEOC investigation continued. During that investigation in 2011, she sent in the EEOC questionnaire, the revised one, that like Judge Elrod says, simply checks the box for religion. Neither the February questionnaire nor the March charge alleged religious discrimination. She filed a declaration in opposition to the motion to dismiss, stating that she, quote, amended her intake form to include the word religion as well as marking the employment harms or actions of discharge and reasonable accommodation. Yes, that's what happened, Your Honor. I don't disagree with that. That's still during the T.W. Yes, during the investigative process. The investigation – she hasn't gotten a right to sue like that. She did ultimately get the right to sue like that. But before – No. It's still ongoing. It's ongoing. But before she – while they knew about it. It's ongoing, that's right. Excuse me. Yes, Your Honor. What religious discrimination had she experienced in February or March of 2011? She had not. So why did she put religion in the intake? No, Your Honor. I must be unclear. She did not put religion initially. She did put religion after she was fired in the new document, the EEOC questionnaire update. Okay. So she's been fired. The investigation is still ongoing, and she checks the box. Exactly. She has not yet received a right to sue letter. She checks the box, and when you see the documents that emerge from the EEOC investigation, they talk about her being fired. There's no way they would have known about any of that. And the investigators inquire of the employer about it? That's right. There's a letter from the EEOC. And the employer answers during the investigatory process about it? Exactly right. So is this the case that we have to decide this issue that hasn't been decided according to our colleague's opinion that you sent us this week? Do we even need to decide that issue today? If you agree with me on exhaustion, no. You can just say that she exhausted, and that can be the end of the case. Well, how come you started your argument on the jurisdictional issue? I think it's stronger, Your Honor. I think the jurisdictional issue is stronger because they waited five years. How is it stronger if you're asking that would require us to do something to change our law? I don't think you have to – well, I don't want to argue with you if you're going my way on exhaustion. I'm not saying that we're going your way. We're asking questions. But let me explain why I think this jurisdiction argument is so strong. Arbaugh from the Supreme Court is in 2007. I read the panel that Judge Elrod was on that issued an opinion yesterday in the Zeke Elliott case that talks about Arbaugh. Arbaugh is a Title VII case. It's directly on point. Of course, it's about the numerosity question of Title VII. But the analysis of Arbaugh is exactly the analysis that you would apply here. You look at the jurisdictional section of Title VII. That's 42 U.S.C. 2000E5F3. It doesn't say anything about the charge requirement. You look at the charge requirement. Does that have a jurisdictional trigger? And it does not. It's 42 U.S.C. 2000E5B. Congress did not rank the charge requirement as a jurisdictional requirement of Title VII. It's simply a waivable, forfeitable prerequisite. And that's exactly what Fort Bend did here by not raising it in their answer, by not raising it in their motion for summary judgment, by not raising it in this court as an alternative ground for affirmers. And then when they hired extremely sophisticated Supreme Court counsel to take a petition for certiorari, they didn't raise it there. You could have put a footnote that said, look, another reason you should take this for error correction is because there's this exhaustion problem. Okay, so you believe Arbaugh is that we don't have to step outside. You know we don't, unless they directly overrule our precedent, we don't. But you believe because it's Title VII that Arbaugh is seminal. Yes, I don't think there's a rule of orderliness problem here for a couple reasons. Can you give us those reasons? Yes. One, Arbaugh. Number two is that if you look at the case I sent you earlier this week, Judge Higginson says the magistrate judge did the orderliness analysis and got to a case from 1970 called Sanchez v. Standard something. And so you would say the 1970 case is the controlling case rather than Porter or one of the others? Yes. That's what I would say. If you're going to do a strict rule of orderliness analysis, I would say you go back to 1970. What case is that? It's Sanchez v. Standard. It's cited in Judge Higginson's opinion. Did you cite it in your brief? I did not. It's in the case that Judge Higgins – that I sent you earlier this week, but I did not cite it, no. Does Sanchez actually answer the question about whether this has been exhausted also? Because didn't Judge Goldberg in that case discuss that they had an issue about whether an issue was raised and said, oh, well, that was all along being considered. It was they added a race claim. You know, Your Honor, I hadn't thought about it that way. I suppose it does. But I would also say the other case I sent you this week where Judge Prado wrote an opinion saying that you can consider EEOC questionnaires as part of the charge also answers the question. The patent case. Yes, that's right. There's Pinkard. Have you looked at Pinkard? Pinkard is the earliest decision in this whole area, and it's very much in support of you. Pinkard is, let's see, 1982, a golden oldie. I'm sorry, Your Honor, I didn't cite Pinkard. Well, it's right on your case, okay? That's the good news. It's really bad when you get up and some judge asks you something and then you have never heard of it, and they say, well, it kills you. You say, okay. This one is for you. I was hoping that wasn't what you were about to say, so that's good to hear. But I do think that if you look at the whole sweep of these Title VII or jurisdictional cases, the answer here is very clear. Long, the latest Supreme Court case, I mean the statute there. Long is a statute of limitations case. Well, it's a statute of limitations case, but the statute said all these claims are forever barred. It's the strongest possible link you could have to jurisdiction. And the Supreme Court even there says that's not good enough. Our case, Arbaugh's, is 8 to nothing. Long is 5 to 4. So, you know, even the much stronger case from the other side's perspective goes well for us. So I think that in terms of an orderliness problem, Arbaugh takes care of all of it. And the clear indication from the Supreme Court. When was Arbaugh? How long ago was Arbaugh decided? 2006. Right. So 11 years ago we should have changed our precedent, but since 2006 we must have had at least four opinions that said we have not definitively resolved this issue. You have not. So basically we're saying that four of our opinions, you know, the judges just didn't know what they were doing, whoever they were. I don't know. No, of course not, Your Honor. They were simply exercising avoidance, constitutional avoidance as they ought to. I just think it's a stretch when you have to say that something from 2006 made a definitive change when four panel – I'd say four. I'm not positive, but it's three or four cases since then have failed to notice. Well, they haven't failed to notice. They've noted the issue and they've decided not to decide it. And also they're unpublished, a lot of them. No, they're not all unpublished. Well, Pacheco, I think, is not unpublished. Right, but there's some others. But in any event, the court just decided those cases on other grounds. Obviously this comes up a lot. It does come up a lot, but usually there's no winning waiver defense. Is that why today is the day you want us to decide the issue because it comes up a lot and we've been punting on it for some time? I mean I'm sure there are other lawyers who are watching this case and would like that issue decided. But you don't need to decide that question. If you agree with me on exhaustion, if you agree the purposes of Title VII were satisfied, that's all you need to decide. We're saying it's an issue and we're not going to decide because cases are not all in accord, and we've traced that at Pacheco in other cases. You have, though the weight of circuit authority is getting very strong on this point. There's GAD from the Tenth Circuit. That's just the score search on the panel. GAD specifically says we are not changing our ruling about jurisdiction with regard to the notice of the claim. Well, it specifically says that because it wasn't before them. But Judge Timkovich's analysis- Yes, but they're specifically not addressing it. They're saying that the business about verification can be waived. They are not taking a position that it changes their law, which is consistent with what I sort of thought was our law, but I could be wrong, that it's jurisdictional. I think the analysis – if the Tenth Circuit with that – of course, Justice Gorsuch is now in the Supreme Court. But if that panel were to get this case, it would come out exactly like GAD. Well, good for you. I know. I can't even predict what my court is going to do, much less what the Tenth Circuit is going to do. Don't let your argument get ahead of things. But I do think in Porter we have Judge John Minor-Wisdom, no slouch on discrimination cases, making it emphatically clear that the exhaustion requirement is found in 717C and is an absolute prerequisite to suit under that section. It is a prerequisite to suit. We don't dispute that. That's the word we use. If you don't – that's right. The question is, is it jurisdictional? Right. It's a prerequisite. Had they timely raised it like the opponents raised it in this case from last night in the Zeke Elliott case, it would be a good defense. And we'd have an opportunity to go amend our EEOC complaint. We would get a dismissal without prejudice, and we'd be back. The problem here is that Fort Bend waited five years to raise the claim. There's no way for us to amend it. And if you allow them to do that, you'll create piecemeal litigation and let other litigants like Fort Bend lay behind the log on these defenses. They should come forward with it. If there's a problem, let us know, and we'll be able to deal with it. If the court has no further questions, I'm done. Okay. Thank you. You have time for a couple. Commissioner Morris? Thank you. May it please the court, I'm Randall Morris. I'm an assistant county attorney, and I'm honored to be here today defending my employer, Fort Bend County. We feel like the failure to exhaust is the first issue that needs to be dealt with because if we don't deal with that, the whole case can be avoided. But unfortunately, Lois Davis did fail to exhaust her administrative remedies for any claim of religious discrimination. This case began as a sexual harassment case. She actually got relief before there was ever an EEOC problem, but she said, when I came back to work, I was being retaliated against. So there was a complaint with the TWC and with the EEOC simultaneously that this was originally a sexual harassment problem. A lady who was given FMLA leave. We're aware of all the factual background. We have a previous opinion and so on. I understand. I apologize. Why do you contend that she didn't exhaust her religious discrimination claim? The best answer of all is that we're told that there was an intake questionnaire that was amended, and we didn't get, the record will not show anything that I'm aware of, that we got that intake questionnaire until two years after the intake questionnaire had originally been dated. Did you answer questions? Did your client answer questions from the Texas employment group about religious discrimination? No. And did you provide any kind of defense to that claim during the time of the investigation? No. As a matter of fact, the response that went in. Now, the record, Ms. Davis says I sent in the intake questionnaire sometime in late summer or fall. Now, by my calculation, even though there's no proof that she even did that, but by my calculation that would be sometime around maybe late August, early September. So when is it your position that you first? She's trying to answer it. We filed a response August 1st, which would have been about a month earlier. That was a response to an unemployment claim at TWC. Unemployment does not get involved, as far as I know, in discrimination claims. Those claims go to the Civil Rights Division. So we did talk about determination. That's what unemployment does. You talk about good cause. So at that point you were discussing the religious issue. No, it was why she was terminated after July. Right. We were talking about the fact that on July 3rd she did not come to work when everyone was required to come to work. And there's also things in there about being insubordinate and not communicating with her supervisors. But our view of all this is she didn't come to work. Right. And so she's the one that has to come up with an allegation that this is about religious discrimination. Okay. In July or August did she say, I didn't come to work because of my going to church. And so you knew before the Workforce Commission and you were defending against that in that proceeding. Yes. So you did know about it. Not that it was some religious discrimination. But that's not notice to EEOC of a Title VII. Correct. Which is the material question. And I think that the most telling things that we see in this case are that the intake questionnaire itself, there's nowhere in the record that we saw that intake questionnaire until two years after the original dating of the intake questionnaire. The questionnaire itself is altered, backdated. I don't know how you say that. Because it was in February 15th of 2011 that the intake questionnaire was originally drawn up. And it clearly involved this allegation. And I didn't mean to digress about the facts of the case. But the point is that this started out as a sexual harassment. Ms. Davis came back to work. She said, I'm being retaliated against now that I've come back to work. So we had gender discrimination, according to her, and retaliation. That was what the intake questionnaire was about on February 15th of 2011. There was no date to go to church until five months later. Unfortunately, that was a date when we had to have everybody at work. She failed to report to work. And we talked to her about it. She wasn't going to come to work, and she was terminated. We're not arguing the merit. I understand. But the point in all this is that anything about an intake questionnaire that was amended, there's nothing in the record that we were provided this until two years after the original dating of the intake questionnaire. And that questionnaire had been altered. It's amended to include the new claim. No, it said religion. It checked off religion, discharge, reasonable accommodation. It gave no facts. And we never saw it at the time the EEOC was investigating. Our response was to the unemployment division, and our response was August 1st, which even according to Ms. Davis, that was before she had done this intake questionnaire. Now, another thing that's important is the authority that was brought to your attention yesterday about an intake questionnaire. The case says that you can do that, and it will be part of the charge if it is filed together with the charge. And this original intake questionnaire was done in February of 2011. The charge was done in March of 2011. But the amended was not filed with that, and it basically changed the entire subject of what we're talking about. And that's the problem for Fort Bend. So if she did indeed send it in, are you denying that she sent it in to them? I am saying that it was. Are you denying that, or are you saying you just didn't get a copy of it at the time? I'm saying we never got a copy of it until February 18th of 2013. Thirteen, right. Over two years after the original intake. You're not saying it wasn't done. I will say that. You're not saying there was some fabrication for the lawsuit or something. I will say that Judge Harmon found it questionable at best, doubtful at best. Okay. But that. If it was, in fact, done, was it her error in not sending you a copy of the changed document, or is it the employment group's? The EEOC. Actually, she was in the Texas. I would say it's both. But I don't know that we're entitled to see the backup documents that the EEOC gets. But it would certainly help us in responding. We never responded to those allegations. We weren't aware of those allegations. It could be that if the EEOC was aware, they might have had an opportunity or an obligation to investigate. Now, I will say this. According to the, I believe it's SAP versus Potter, you can't do it that way anyway. Because if you have retaliation, you can go forward just with a retaliation that comes out of the original charge. But if you have not only retaliation, but a new type of discrimination, you have to go back and start all over again with a new charge. And that's the problem here. Another thing from the county standpoint is that the theory of the case changed even after we got into litigation. In the response to our original motion for summary judgment, plaintiff's counsel, different counsel at that time, but their trial counsel said defendant had every intention to terminate plaintiff because she filed a sexual harassment and retaliation charge against defendant. Plaintiff's termination from employment on religious discrimination was defendant's final act of retaliation. And further down it says plaintiff's lawsuit was filed because defendant retaliated against plaintiff for filing a sexual harassment and retaliation complaint against defendant. Plaintiff's termination from employment was just one of many acts of retaliation by defendant. This is from the response to the motion for summary judgment, and it even quotes the pleadings, see plaintiff's original complaint. So the original theory of all this was that this is a retaliation case. And there was a new type... Maybe that's because they realized they hadn't exhausted the other. Well, I don't know. I don't know. I mean, if that's what they realized they... But unless you, I mean, if you have something material to say about this, we understand your point here. And then so if she did not exhaust a religious discrimination claim before the EEOC, then we have to get to this other issue, which is whether in light of evolving Supreme Court authority or whatever exhaustion is, whether it's jurisdictional. Well, I don't think that's the only way to affirm, but I think that's the more, the better way to do it. Well, how else can you affirm? Well, Fort Bend did not waive this exhaustion requirement, even if it's not jurisdictional. But I prefer to talk... I find that sort of hard to believe in light of the way the case evolved. I mean, you could erase it in the first appeal, it seems to me. I respectfully disagree in that if this is a retaliation case, I don't think there's any defense to non-exhaustion if it is in fact a retaliation case. I don't think she has to go back on that. So if we go, what you're contending is if we go through all her pleadings, that basically they maintain a posture of retaliation up until what point? Up until we get the word from the Fifth Circuit that there's no retaliation in this case. Oh, okay. And then is there an amended pleading filed? Yes. And is there an amended answer filed? Yes. And in that amended answer, did you raise this issue? After the Fifth Circuit? I don't believe you did. Yes. Yes, we did. Did you raise this issue in the amended answer? Yes. Okay. That's the first time you raised it? Well, we actually, on the first go-round, had to plead to whether or not conditions precedent to jurisdiction or conditions for jurisdiction had been met. And our answer at that time was we had insufficient information. Cannot admit or deny. Could not admit or deny. And the reason being that if this is a retaliation case, then I guess we're stuck with it. But once we find out it's not a retaliation case and we receive the law of the case that not only, one, retaliation is out, and, two, religious discrimination is now irrelevant to retaliation. And now I think we clearly get into a situation where what was ruled upon in Sap v. Potter. Now we have a new type of discrimination, and you have to go back to exhaust a new charge based on new facts that have not been investigated. How do we know if they were investigated or not? Because if they had it for all the time during the investigation, we don't know whether it was investigated or not. I think that was the job of Judge Harmon to look into that. And she did what I would call a fact-intensive analysis. And she found, to my count, seven reasons why she did not see that the investigation had been done or, more importantly, that the exhaustion had been accomplished. And I have to go to her opinion at this point. One, plaintiff failed to provide any evidence that defendant received notice. Two, and this is somewhat the same as one, there's no evidence that defendant was aware of her amendment. The answer or response that was shown to the court August 1, before the intake questionnaire alteration even went out, according to Ms. Davis, functions as a response to allegations of retaliation. The new intake questionnaire was factually unrelated to her original allegations of gender discrimination and retaliation. The plaintiff did not include any additional information or explain her claim whatsoever. There is no evidence that the EEOC investigated. And, in fact, when the TWC did its predetermination letter, it said it cannot be established that the employer has discriminated against you based on sex retaliation. Now, there is some boilerplate language that says, or any other reason prohibited by laws we enforce. And I would respectfully submit that's boilerplate language. They specifically gave a predetermination on sex and retaliation, which is what this case was about when the complaint was filed, and up until the time the Fifth Circuit issued its last opinion. Okay. Can you clarify whether it's based upon this one incident about going to church on July 3rd, or if it's more extensive about religious discrimination? It's the one. So it's the one that everybody knows about. They were all in the same church, weren't they? There was an allegation that she knew Mr. Cook from church and Kenneth Ford. I think maybe he was said to have gone. That never was an issue, but I do remember seeing something to that effect. So it's not that you don't know of what the basis of the, because it came up in subordination. She said, I want to go to church, and they argued, and she said no, and that's the whole basis of the religious claim. So it's not that the facts are not known. The factual basis is known at the time of the termination. Let me see if I can explain, but I will have to kind of go back to the other phase of the case, and that is that she said, I want to go to church, and they said, I'm sorry. There's a lot of people who want to go to church, and we can't let you go to church. But then supposedly they talked about, okay, you can go to church, but you have to come back to work. None of that, though, is part of the, that I can see, is part of our response or a part of the EEOC's investigation. Okay. We probably should move on to the rule of orderliness question. If the magistrate judge who is cited in the most recent case from Judge Higginson is correct, and if the standard case is the oldest case from 1970, do you lose on the rule of orderliness point? I'm sorry. I don't even know what that is. In other words, the question whether the exhaustion issue is jurisdictional or waivable is a matter of law, and we have a bunch of opinions very recently in this circuit that say that we've never resolved that issue definitively, and there's supposedly a 1970 case, which I have not personally reviewed, that apparently says that it's non-jurisdictional. And, of course, the answer, which you've already said, is you would not have waived it even if it is waivable, but Judge Elrod is asking you whether it is jurisdictional or whether it's waivable. It's jurisdictional, and I think that if you go to McDonnell Douglas way back in 1973, it has the language, respondent satisfied the jurisdictional prerequisites to a federal action. And this is on page 798 of the McDonnell Douglas case, which to me is the case that enters almost every discrimination case I've ever seen. It also talks about the two requirements and cites sections 2000E5A and 2000E5E. But, obviously, there is talk that there's a split in our circuit. One of the things that I would point out is the most recent opinion I'm aware of is Simmons-Myers, and that was in 2013. That is not- We're bound by the oldest opinion, not the newest. Okay. That case that I mentioned, it says, Pinkard, it says that the question it's addressing is, quote, whether the receipt of a right to sue letter is a jurisdictional prerequisite, which if not satisfied deprives federal courts of subject matter jurisdiction, or whether the requirement is a condition precedent subject to equitable modification, close quote. That's what it was deciding. Well, interestingly enough, the right to sue letter, there was a right to sue letter in this case. But the question is, what is the scope of that right to sue? And, first of all, I had mentioned Simmons-Myers. Courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies. What my suggestion has been to the court is that even on the exhaustion question, we have a balancing of competing interests. And the best way to approach the jurisdictional question is that there is a fact-intensive analysis that's addressed to the court under Rule 12b-1. And the court should then balance competing policies. If we're talking about a defect in exhaustion that is a technicality or a time limitation, then usually under liberal rules of construction about exhaustion of administrative remedies, even in a jurisdictional inquiry, you can say, okay, we had exhaustion. And I would even submit that that's why these cases have never come to the ultimate issue of whether or not this is jurisdictional in the first place. But we also know that there is another policy. And that is that courts should not condone a lawsuit that bypasses and circumvents the EEOC. Because to do so would peripherally substitute litigation for conciliation. And that is another competing policy that basically says you cannot exceed the scope of exhaustion. And that is a jurisdictional problem. Because if we give that up, then... Well, let me add, you know, in the context of the Prison Litigation Reform Act, the Supreme Court specifically held that exhaustion is not a jurisdictional requirement. And that law made an enormous change in how we handle prisoner litigation because it said that state court prisons or whatever, jailers at the non-federal level, if they have an administrative remedy procedure, that those procedures have to be utilized by the prisoner before he can file suit. And the Supreme Court held that's not jurisdictional, and therefore it's subject to waiver by the authorities. So why wouldn't that kind of reasoning apply here? Well, I think you have a policy issue that if you go that far, you're going to put the EEOC out of business, and the entire statutory scheme that we're relying on is going to be changed. I think there is a thing that is jurisdictional... How does a defendant... Well, I'm sorry to keep taking your time here, but as a practical matter, how would a... If exhaustion is waivable, how would a defendant be prepared? You know, this situation arose, according to you, because of the surprising result by the Fifth Circuit. But suppose it had come up earlier in the process, and you file for summary judgment, and they say, no, you can't grant summary judgment because we were discriminated against for religious reasons. Well, let me first clarify that this is not simply because we got a surprising result. It's because we feel like the entire theory of the case changed at that point, and we were presented with something that we had never been presented with before. And so, first of all, we as the defendant would not waive that situation. But let's assume, for sake of argument, that we did. Let's just assume we said, let's don't go to the EEOC. Let's just meet you over at the courthouse. Courts should not condone lawsuits that exceed the scope of EEOC exhaustion because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation. Now, I'm not here to represent Congress or EEOC, but I think that at some point this is jurisdictional. And we raised it because we were surprised by what had happened. I think the larger policy argument is really not my job. Okay, well, and your time is up. Thank you. I appreciate your attention. Okay. Mr. Melkonian, if you want an extra minute or two, I don't think you'll need it, but it's up to you. That's fine. Let me address this question about how they were surprised or they were unaware that we had a religious discrimination. It's not a question whether they were aware. The real question is whether the EEOC was aware. Let me answer that directly, but I do also want to answer the claim he's making that somehow it was a surprise in the Fifth Circuit. Let me answer your question directly. Here is the EEOC's predetermination letter. It says, It is affirmed you were instructed to assist in the county offices being moved on Sunday, 7-3-11, and you became insubordinate to managers stating you had church commitments and where you refused to answer calls when you were called. That is the exact basis of this case. That's what this whole case is about. But if you argued it, the plaintiff is a master of her complaint, and if you were telling the EEOC that that was a pretext for retaliation because she had gotten the other fellow fired just six months or less, you understand? I do, but that's not what we said. But it could be. Well, he said you said this was part of the campaign of retaliation. Yes, but that's wrong. What, you didn't say that? We said that one of the motives for why we were singled out was that Ms. Davis had become unpopular at the office with this boss because she had gotten his friend fired. Maybe. Well, let me say, is the entire EEOC file before this court? No, it's destroyed. All we have is what we have right here. So it's he said he said as to what was before the EEOC? We have an affidavit that says we sent it in. I know you sent in an intake questionnaire that had one word, religion. No, I understand, and then we have this document from the EEOC. No one says it's not. Is that in the record? Absolutely, Your Honor. Well, that's what I'm asking. No, you said the entire record. That's not in the record. I just want to be accurate. But this letter that I'm quoting you is at Record on Appeal 659, and it says exactly the facts that are at issue in this case. If you go back to our complaint, there is a cause of action for religious discrimination. They knew exactly what our problem was. If you look at the briefing, which wasn't me. It was my predecessor counsel. It's all about this. Judge Harmon wrote an opinion about religious discrimination, and then when it came to this court, the big issue was religious discrimination, and Judge Smith wrote a 20-page dissent about our arguments about that. There is no way that they were surprised about religious discrimination in this case. They may not have focused on it. That may be true, but that simply isn't right, that they couldn't have raised this issue from 2011 when this case was filed, or early 2012. So there's just no doubt about that. So that goes to the question of waiver. It doesn't go to the question of exhaustion. Whether they knew or not. That's right. I'm just saying that in terms of waiver, the record is very clear. But the letter from 659 goes to exhaustion. That's right. The letter 659 goes to exhaustion because it shows that this question that we're litigating arose in the context of the EEOC. Yeah, but then all you have is this disposition from the EEOC. We have considered sex and retaliation. And it says and other things, and then it discusses our facts. Is that in the record? Yes, that's in the record. That's the ROA 659. It says she wanted to go to church. She didn't want to let her go to church, and she was fired. But that doesn't necessarily mean religious discrimination. I understand that the words religious discrimination are not in that TWC letter. But when you put together our EEOC questionnaire, which says it. I mean, when you put together what, where you checked religion, you said one word. That's right. I understand it's one word, but it's one word combined with the EEOC. But you're supposed to explain the factual basis for a claim. There's a big difference between retaliation and religious discrimination. I understand what you're saying. And, of course, it could have been done more artfully where we sent in another EEOC charge with a full description of what happened. It should have been done more artfully. I wasn't counsel, Your Honor. But what is true is that all the facts that are at issue in this case came up in the EEOC investigation. They had a chance to discuss them. We had a chance to discuss them. The policy requirements of Title VII were satisfied. Sorry, Your Honor. I don't think so. I mean, I really don't. Just in from the – well, waiver is one thing, but as far as exhaustion goes, I find it very difficult to see that. Well, I've got – I've given you my best, Your Honor. That's what I've got. I understand, and I'm going to look closely at what's in the record because you can't – we don't have a clear picture from the two of you. I have a question. Hosting Council says that McDonnell Douglas is the case that says it's subject matter jurisdiction. No, it doesn't say that. Do you have any kind of response to that? I need to go read McDonnell Douglas again, but I'm pretty sure it doesn't say that. And if it did, that means all the other courts that have said that it's not jurisdictional have been ignoring Supreme Court law. What about Arbol? And Arbol itself, which, of course, is Title VII and says it's non-jurisdictional. The numerosity requirement, but it's all the same analysis. Judge Harmon does have a footnote where she says there is no evidence that the EEOC considered her claim of religious discrimination, which it presumably would have done upon receipt of her updated form. Yes, she says that. Is that a finding of fact or a conclusion of law? No, it's neither, Your Honor. It's a sort of – I would say dicta. It's not dicta, but anyway. Well, but it's not a finding. She doesn't say it didn't happen. She just says I have doubts about it. She said there's no evidence. Well, the evidence is her affidavit that says I sent it. No, she says there's no evidence that EEOC considered her claim of religious discrimination. Well, I disagree with that conclusion to the extent it's a conclusion of law because of the letter that I keep citing. But I don't have anything else. I just want to be clear about that. It's that ROA-659 that shows that EEOC did consider that. Okay. Thank you very much. Okay, thank you.